cetera. All right. We have the next case of the morning, number 1450878, Netspend Corporation v. AXIS Insurance. Pardon me? Well, this is . . . I don't . . . That's highly . . . Mr. Bethod, do you know where your opponent is? Well, go ahead and make your argument. I've never seen this before. That's quite irresponsible on his part. May it please the Court . . . and I was going to say counsel. May it please the Court. Ty Butow for Netspend in this matter. Let me express first what the concern is on behalf of the insured in this Texas insurance dispute. If the district court's ruling is allowed to stand, then the rule that it articulates is going to impose an impossible, untenable burden on insurance in the state of Texas. Simply put, it would require an insured to give notice of uncovered claims. If there's a lawsuit that gives no rise to coverage under their insurance policy, they would still be required to notify their insurer to avoid the very gotcha that Netspend suffered here. But don't we focus on the notice of the facts rather than notice of the particular claim? Absolutely. You focus on the factual allegations showing the origin of the damages, not the legal theories. In other words, Judge Smith, one can't write up a petition that says you accidentally hit my car and caused damage, therefore you're liable for trespass. An insurance company can't say because it's trespass it's not covered because the facts clearly allege negligence. No matter what label or legal theory that's put on it, if the facts would allege negligence, that's going to be a covered claim. The original petition here, Judge, the original petition here did not allege any facts of negligence. The damages sought or the relief sought, I should say, the relief sought was an accounting, declaratory judgment, and to enjoin Netspend from how it would, to enjoin Netspend from further drawing down off these accounts that were in dispute between the bank IMB and Netspend. Part of the difficulty with that, in looking at that filing, the first state court petition, there's no substantive causes of action asserted, like negligence or breach of contract, but you need an underlying cause of action to get a declaratory judgment. It has to be based on a contractual dispute or something like that to get an accounting as I read Texas law. I mean, those are essentially derivative remedies or actions. So it seems to me we have to look at the petition. That's what Judge Sparks did to see what the factual allegations were that supported the request for declaratory judgment and the like, but it involves that guesswork because there is no, it's not the typical petition with, you know, first negligence, second breach of contract. I agree, Judge. There is a cause of action in Texas. One can file against a defendant seeking an accounting. It wouldn't normally be covered under any kind of liability policy, but that is a recognized part of the Texas Rules of Civil Procedure. Now, what the district court focused on and erred in, I would put, is by taking this sentence out of the petition, Netspend's role as the settlement agent has been riddled with errors. Well, they don't seek any relief for those errors. They want some independent third party to do an accounting, but it is not a claim to collect on some sort of shortfall. They're not seeking damages from Netspend. They're not alleging some kind of tort against Netspend. If you read the petition, it is eminently clear that the premise of the relationship between the two parties is a contract, and in fact, when the insurer denied coverage in this case, they pointed out exactly what we're telling the court today. They said a breach of contract action wouldn't be covered, even though even it wasn't alleged in the original petition. It wasn't the first amended, and it said that the damages of seeking an accounting, et cetera, wouldn't be covered either, and that's where it becomes a gotcha. I don't dispute the basic premise of Texas law that we're talking about here, but under this petition, the mere sentence that says your conduct was riddled with errors, it could later give rise to some kind of a tort claim, but it clearly didn't. I mean, there's a way to plead negligence. But if it's a close call on what the petition really asserted, isn't that why this presumption issue matters so much? And the court below said the presumption is in favor of coverage. I know you're arguing the presumption is just whatever's in favor of the insurer's interest. That seems to me to create a real problem, because you would basically be saying that this same insurance contract would be interpreted differently, the same exact contract, based on the time at which you submitted your claim. Because if you had submitted your claim for insurance originally, then we would have interpreted it broadly and said, oh, the petition must be read to mean coverage. But now, since you missed the deadline and it's in your interest not to have coverage on that original petition, the interpretation in your favor means something different. Why doesn't that lead to different interpretations of the same contract, which would be difficult to reconcile? I'll respectfully disagree with the question. And let me just say first, we're not advocating that courts merely slavishly say that you have to file a rule of construction, that everything goes in favor of insurance. It's not such a simple approach. Otherwise, we wouldn't need judges or juries, et cetera. The question becomes if, going back up, Texas public policy, for better or worse, is pro-consumer in insurance contracts. It's not some abstract proposition in favor of coverage that you look at a document and say there ought to be coverage. It is in favor of insurers, or insureds, excuse me, insureds. So the point is, under the eight corners rule, you would have stacked up the pleadings against the policy. And the policy, as I understand it, defined wrongful acts as an unintentional breach of contract or a negligent act. And part of what you're saying is that they were not alleging negligent acts, anything that could, errors does not mean. That is absolutely correct. It's neutral as to whether it's, so when you look at this definition of wrongful acts, it would appear that the insurance company was right that there wasn't coverage, and there probably wouldn't have been a duty to defend on the original petition. I wholeheartedly agree, Judge. I'm sure you do. Well, because the definition of wrongful act, the part I'll isolate on just to look at is a negligent act, error, or omission. And there's no dispute that negligent there modifies all three of the nouns. It has to have been a negligent act, error, or omission. And in fact, I wouldn't even be surprised. Did INB know anything about this coverage issue? I have no idea about that, Judge. Well, it would have been to their advantage to plead it so that there was coverage, wouldn't it? Absolutely. And that commonly happens. You'll read petitions, and I'll submit that's probably where the body of law came from, Judge, where we talk about how you look at the facts and not just a label of a cause of action, because lawyers can draft petitions in such a way to either worm into coverage or somehow try to avoid it. And that's why the courts have said you really have to look at the facts and not the labels. Now, what we would submit here is, again, if this becomes the law in the state of Texas, at least in federal court cases applying law in the state of Texas, then you would have an insured to take a stark example. An insured sued for divorce would have to go give notice to their homeowner's policy because maybe later the spouse is going to claim defamation. That would be the argument because the original petition. Well, now you're talking about isn't this peculiar to claims made or is this peculiar to all duty to defend cases? Well, I don't think it would be as applicable for occurrence policies because, frankly, Judge, the insured would force the insurer to show some kind of prejudice. Well, so the homeowner, but I mean the point is the homeowner, that kind of policy is an occurrence policy. All right. I can find another example. But my point is simply that requiring an insured to give notice when there is no coverage is nonsensical. It seems counterintuitive. How do you have late notice? If even the insured knows there's no coverage, it's quite counterintuitive. It is. And in that sense, too, Judge, let me make this point. It is very, very different from the Willis case from this court. The insurance company embraces this Willis case, but it's very different in two very significant ways. In the Willis case, the amended complaint, the one that the insured claims triggered coverage, the amended complaint is based on identical facts as those used in the original petition. You see that on page 342 of Willis. And that goes to that question about do you look at the facts or do you look at the causes of action. In Willis, the facts were identical. And the reason we submitted a redlined version of the second amended petition was to demonstrate that there are new facts. When one looks at the eight corners, as Judge Jones instructs, and you look at the eight corners, there are new facts in the second amended that were not in the original petition. This is different from Willis. The other way it's different from Willis is the court describing the position of the insurance company in Willis provided the following. And it's a bit of a double negative. But they say that National Union, the insurer, disputes that coverage was never triggered in the original petition. In other words, the position of the insurance company there was the original petition created coverage. Now, they might have a defense that might arise at the end of the trial over whether some misrepresentation was intentional or not. But the insurance company said the original petition created coverage. Here it is manifestly clear that the insurance company has taken the position that the original petition did not create coverage. And they are correct. So if you take those two facts in Willis, it's frankly a fairly straightforward outcome. If the original petition is covered and the insured failed to give notice, there's no rule of construction that can twist that to make the insured. I mean, there had to be some wrongdoing to give rise to that action. You're saying it was all alleged intentional theft of the funds, non-negligence. It really wasn't a theft. It's more a matter of a, I think of it almost like an E&O kind of issue of there's a dispute. You're saying millions of dollars have been put in the wrong place essentially. That's what it says. Why can't that be read to result in part from negligence? Well, it could be. It's unlikely since it's not pled. I mean, you don't read anything about a duty or a breach or a proximate cause or damages. They don't seek damages. They're not asking. A breach of contract. In the First Amendment and the Second Amendment they do. But they don't even seek damages, Judge. It's a matter of saying we think that this contracting party fouled up. But that alone, when they're not seeking damages and there are no factual allegations that address the source of the damages, which is the standard we have in Texas. We've cited from that National Union versus Merchant Fast Sales case, insured as an automobile dealership. If the question becomes whether the facts giving rise to the damages create coverage, then that's really easy on that original petition. Because there are no damages sought. There's equitable relief sought. And if they think there's some dispute about the accounting, they're welcome to sue us to seek an accounting. But we would be strangers to our insurance company on that lawsuit. Just like if any of us were sued on some kind of intentional conduct or something else that wouldn't trigger coverage. So that's why, and I don't mean to sound flippant, and we wrote this in our brief. That's why this is a gotcha case. The insurance company has given us two messages. That the original petition wouldn't have been covered. And since you told us late, we're going to rely on the late notice provision on a claims made policy and say that the first time there was a covered claim, you told us too late. And now admittedly, regardless of what I may think, admittedly under Texas claims made policies, one need not show prejudice by the insurer. They don't have to come in and show prejudice for that. Okay. I know I've reserved some time for rebuttal, but unless the Court has any questions, I'm happy to sit down. It's a pretty clear-cut issue. Thank you, Judge. You have time for rebuttal, though. All righty. Mr. Klor. Your Honor, Duncan Klor for Dependents Access Surplus and Access Insurance. We agree that the issue in this case is what does the eight corners rule mean? How do you apply it? And secondly, did the original petition assert a claim for a wrongful act? We believe the district court got those questions correct and that the original petition did assert a claim for a wrongful act when construed under the eight corners rule. The first issue, I think, regarding the application of the eight corners rule is pretty clear-cut. And that's been in sites a number of cases for the proposition that you construe coverage in favor of the insurer. Well, you really construe coverage, the pleadings in favor of coverage, and that is what the cases all say. You narrowly construe the policy with respect to defenses, and you broadly construe it with respect to coverage, and you broadly construe the pleadings in favor of coverage. Well, you already denied coverage. Ma'am, we denied coverage because the notice of the original petition was late. You also denied it because it was a breach of contract. No, ma'am, we did not. Well, where's that language? We have attached that in the record excerpt in the denial letter. If Your Honor reads that carefully, what was raised was the potential applicability of the contract exclusion, which, if the facts established that exclusion applied, would vitiate coverage. We did not deny because this was a breach of contract case. But you said alternatively, right? Well, the letter speaks for itself, Your Honor. As I say, it's attached in the record excerpt. Right. Your Honor can read it and draw your own conclusions. We submit that like most letters written by insurers, you point out all the potentially applicable policy provisions and their potential applicability. The claim was denied for late notice. We believe the cases make it very clear, including several Supreme Court cases which we have cited, that in applying the eight corners rule, the parties are to construe the pleadings and the policy in favor of coverage. With respect to the issue of whether or not there's a claim for a wrongful act alleged in the original petition, NetSpend makes a lot in its brief of the fact that injunctive relief is being sought to stop NetSpend from spending down the funds in the account, which would have left INB potentially, if there was a shortfall in funds, holding the bag, so to speak. But the whole premise of the lawsuit was whether there was a shortfall, as contended by NetSpend, as NetSpend had reported to INB prior to the inception of either of these two policies. That is clearly set out in the pleadings. The court, we believe, did properly construe the language of the allegations and the fact that the only cause for the shortfall, if there was a shortfall as contended by NetSpend, was NetSpend's mismanagement of the accounts in question, which would have resulted in the shortfall of funds. They sought an accounting. They sought a declaratory relief to declare that any shortfall, if it existed, to determine the amount of the shortfall and to assign the responsibility for that shortfall to NetSpend. And then lastly, of course, they sought injunctive relief, which, if NetSpend was not responsible for the shortfall, would not have been justified. The policy defines claim as a demand or written assertion of a legal right against the insurer seeking damages or non-monetary relief. NetSpend has made a lot of – has put a lot of emphasis on the fact that at least the initial petition does not have an affirmative claim for damages. Well, I'm not sure that it may not be artfully played that way. They clearly seek a declaration that any responsibility for the shortfall be assigned to NetSpend and seek a declaration as to whether a shortfall exists. I submit that's a claim for damages. But a claim for damages is not required for there to be a claim. A claim for non-monetary relief, which is clearly involved here, would have constituted a claim. So there really is no issue as to whether a claim was asserted here by the original petition. The dispute is whether or not that claim asserted a wrongful act on the part of NetSpend. Wrongful act is defined as any negligent act, error, or omission, or unintentional breach of contract. I've never heard that term before, unintentional breach of contract. I actually did a global Westlaw search because I was unfamiliar with it. Maybe it's self-evident, but in every reported case, I think it came up twice. But what does it mean? I mean, intent's usually not an issue in breach of contract. No one is going to plead intentional or unintentional breach of contract. Well, I mean, I think we all know what an unintentional breach of contract is. Why is that coverage there? How do you know? I mean, no one ever pleads. There's no separate cause of action that I've seen for intentional or unintentional. You plead breach of contract. It doesn't matter whether they meant to or not. Yes, Your Honor. If one looks at the definition of wrongful act in this particular policy, which was a technology professional liability policy, there are certain breaches of contract that are, in fact, covered under this policy. And so, therefore, although— First claim or the second petition? First petition or the second petition were covered? You misunderstood me, ma'am. I did. What I was saying is the coverage provision in this policy provides coverage for wrongful acts, which include claims for unintentional breaches of contract. There is limited coverage for certain types of breaches of contract, which are not relevant here. Okay? So, and the definition of wrongful act includes certain contract breaches that would be covered, certain types of contracts that are not relevant here. In the situation in this case, there are clearly some contract breaches alleged. I think, you know, clearly the relationship between I&B and Netspan was contractual. No question about it. There are clearly breaches of contract alleged. But there are also allegations which, when broadly construed under the eight corners rule, may fall outside of contract. And the contract exclusion in this policy, like most contract exclusions, is a conditional one. It is not one that excludes all contract breaches. It only excludes those that, only that liability which only exists because of breach of contract. And under the facts presented here, where there are negligent acts, errors, and omissions alleged, and we submit error is or can be construed as a negligent act, error, or omission under the eight corners rule, you have allegations which potentially may fall within coverage. If we didn't have that construction, Your Honor, I would submit that many, many cases would be denied by insurers on the basis of the fact that there is at least initially pled a breach of contract. And as we well know, there are many cases where breaches of contract have been alleged, where nevertheless courts have found that the duty to defend, which is separate and independent from the duty to indemnify, has been triggered. In fact, the duty to defend is broader than a duty to indemnify in most contracts such as this one. There clearly are several areas of agreement between the parties. All the parties both agree that the first policy, the 2011 policy, does not cover this loss. Given the timing of the notice and AXIS's position that coverage was triggered by the second amended petition, which was not filed until after the second policy had commenced, there can be no coverage under the 2011 policy issued by AXIS surplus. So really we're all talking about whether or not there is coverage under the AXIS insurance policy issued in 2012. In addition, we all agree that in this particular instance, if the original petition triggered a claim and the obligation to give notice, that notice was not timely given under the 2011 policy. We believe that Judge Sparks was correct in his construction of the pleading as a whole. Okay. Here's your letter. Furthermore, to the extent that any breach of contract allegation falls within the exclusion noted above, there is no coverage. Yes, ma'am. That's pretty unequivocal. It is unequivocal. It doesn't say that that exclusion applies under the facts of this case. It says if any of those allegations fall within the exclusion, they are not covered. Okay. No, it says the allegations do not include any wrongful act relative to disseminating matter. This may be another definition used in this policy assumed under contract. It seems to be a summary of the insurance company's position, but I'd have to. The letter does attempt to summarize the insurance company's position and the potentially applicable coverage provisions, Your Honor. I would submit, however, even if the carrier incorrectly denied the claim because it believed that the claim was excluded by the contract exclusion, that is not dispositive of this case. The parties also agree that if there is no coverage, the extra contractual claims in this case fall. I think we all know that. And then lastly, Your Honors, we believe that, and as we have raised by cross point, the pleadings make it very clear that the dispute involving the shortfall did not begin with the commencement of this lawsuit, but appears to have arisen prior to the inception of either of these two policies. Although that was not a basis for summary judgment, it was raised, properly raised by the Axis defendants as a potential factual dispute, which would have precluded summary judgment for net spend if it was correct in its construction of the original petition. So basically you're saying that you have this odd definition of wrongful acts under the policy. I mean, it seems odd to me because of the unintentional contract breach or negligent act are defined, are the definition of wrongful acts, right? Yes, ma'am. So since we don't know the difference between an unintentional contract breach and an intentional contract breach, do we? Well, you can't tell from the petition. Can you define, can you describe the difference to me? Between an intentional contract breach and unintentional? Yep. Well, ma'am, if I, well, just to give you an example, if I'm obligated to perform a certain act under a contract and I with intent refuse to perform that act and thereby breach the contract, that's an intentional breach of contract. An unintentional breach of contract would be if I, trying to perform my duties, fail to perform in a proper manner, let's say I'm building a building and I screw up and I don't build it in a professional manner and there are therefore defects in the building, I would say that is an unintentional breach of contract. All right. So what intentional breach of contracts were alleged in the first petition? Well, one of the intentional breaches of contract, at least was contended to have been an intentional breach of contract, would have been the drawing down of funds when Netspend had refused to accept responsibility for any shortfall or, in fact, to have established a shortfall. That would have been an intentional act. Maybe I'm confused. I thought the unintentional breach is what's covered under the contract. The unintentional breaches are what is covered, yes. It's like intentional torts aren't covered, this concept that's apparently new. Intentional breaches of contract aren't covered. So I guess the question is, is there an unintentional breach of contract alleged in the petition? Well. Right? I would say, first of all, intentional acts aren't covered, period. Are not covered at all. Are not covered. Intentional acts are not covered at all. That's standard, intentional torts. Correct. Whether it's an intentional tort or intentional breach of contract, it's not covered. Unintentional, whether they're. . . Ordinary breaches of contract are not covered, whatever ordinary are. If those. . . Unintentional are covered. Negligent acts. Well, except to the extent excluded, Your Honor, that would be correct. So basically, most actions on the contract are not covered. Most actions on a contract would not be covered. That is correct. All right. Then how can you say that the first petition filed alleges anything other than contract? Well, I think that if we were talking indemnity, Your Honor, I think Kerry would probably say that the facts of this case would likely have established that all of the likely, all of the liability, if any, was established, was probably due to breach of contract. Why shouldn't we. . . Okay. Why shouldn't we interpret. . . I mean, I know we look at the facts, but why shouldn't we look at the facts and the ambiguity of the facts in light of the ambiguity of the coverage. Well, first of all. . . To say that a reasonable insurer could have interpreted this as not being worth reporting to the company. And, of course, then we'll remand and you'll go back and say, oh, well, this all arose before July of whatever it was. And so you're late on that basis. Well, I think when you really lay the second amended petition next to the original petition, although there are clearly two additional claims against two additional parties alleged and there are causes of action alleged where previously causes of action were not spelled out, the facts really, at least the facts regarding the mismanagement, do not really change. They are expanded upon, but they do not really change. And you can't tell. . . Basically, it's not covered because it's either an intentional breach of contract or a negligent breach of contract, but you can't possibly say that it's an unintentional breach of contract. I don't think you can say, and the insurer concluded, from this pleading, which I think we will all agree is a fairly bare bones petition, that you could exclude the possibility that there were not claims outside the contract based upon the errors. There were allegations that . . . which is normally what would be the remedy for the kinds of things that your policy is supposed to cover. The policy covers not only claims for damages but also claim expenses, which are defense costs. The policy defines claim. Well, I understand that, but we're talking about the insurer's reasonable view of the situation at the time the suit was filed. Well, I think that when you look at the petition as a whole, it is clear that allegations were being made that if there was a shortfall, it was caused by Netspen's errors. Let me ask you, it sounds like you're not defending everything Judge Sparks said because I have his order right here. He found that there should have been coverage on the original petition, which, if that's the case, meant the claim was submitted untimely. Because he says the allegations seek non-monetary relief arising out of negligent acts or unintentional breaches of contract by Netspen. But you're not saying there were allegations of unintentional breach of contract. Well, I think there were allegations of unintentional breaches of contract. Well, you reserved coverage. You reserved your defenses on that, though. The exceptions. Well, we did reserve all of our defenses. I thought you said a few minutes ago that there was the contract – because of the exceptions you're saying it wouldn't be covered. Because of the exceptions, it likely would not have been covered. That's correct, Your Honor. How is this an unintentional breach of contract? It seems – why wouldn't it be an intentional or negligent breach of contract? To the extent those terms even exist. Well, I would say a negligent breach of contract is unintentional. I'm not sure that those are exclusive of each other. Let me ask, what is the basis for having a different rule for the eight corners in a claims-made policy than an occurrence policy? I don't think there is any basis for a difference. You're talking about how the eight corners rule applies? Right. I think it's the same rule either way. Well, give me a case with – I mean, is the Willis case your main case why this would – this notice wouldn't have been seasonably given here? I think that that is – that appears to be the closest case on the facts to this one, which involved a claims-made policy, a D&O policy, and involved pleadings that essentially did not materially change, at least the allegations of potentially triggered coverage did not materially change, and clearly made it very clear that the eight corners rule is applied without regard to whether it favors the insured or the insurer. It favors coverage, and in this particular instance, we believe the Willis case is not materially different than this case and does give the rule of the case. Okay. Thank you, Your Honor. Thank you. I think that was a very useful exercise, the colloquy that just took place, and it really does leave one with a sense that there's sort of a heads-I-win, tails-you-lose perception from the insurance company here. One cannot look at the record excerpts of the denial letter, where there's a big banner heading that says Exclusions, and they quote the breach of contract section from the insurance policy, and the insurance company writes, the policy specifically excludes breach of contract allegations unless these exceptions apply. And then they go on and they quote one of the exceptions, and they say, the allegations do not include any wrongful act relative to disseminating matter, and therefore the exception, assumed under contract, is not applicable. The insurance company denied coverage because this was a breach of contract action, just like Judge Sparks found. Judge Sparks finds that the letter, the denial letter, went on to note the claim would not have been covered, even if it was timely made, because breaches of contract were not covered under the circumstances presented. That's true. And the shortfall litigation did not present a claim for damages. That's also true. That's the position the insurance company took. Then when there is a covered claim, they say that the insured was too late to notify the insurance company because we didn't tell them about the uncovered claims. Now, I think the most revealing thing that just took place is when we were talking about what exactly the facts are. What are the facts in the original petition that would give rise to coverage? And the only facts cited either by the court of the district court opinion or the insurance company is the one sentence, Nett spends role as the settlement agent has been riddled with errors. Original petition, paragraph two. And what counsel has just told this court is that that can be read to be negligence. And here's why I think you do care about whether Texas public policy is pro-consumer when it comes to insurance companies and insurance. The mere fact that it can be read, which I even disagree with, but the mere fact that it can be read to be negligence is insufficient. If that can be read not to allege negligence, then the insured prevails. But if you had timely filed a claim and we were deciding whether there's coverage on the first petition, the rule in favor of coverage would have been to broadly read that language to say the petition did allege negligence. If the timing had been different, the rule favoring the consumer, as you call it, or the insured, would have been to read the petition that that word you talk about riddled with errors, that phrase, as giving rise to negligence. That would be the pro-consumer view if that were the posture in which this was before us. But here again, I don't believe it's proper to just slavishly apply some rule in spite of the words or the facts. We know what a negligence claim looks like, Judge. But that's saying it's not a negligence claim. That's not saying the rule . . . I just don't see how it can be that you always rule in favor of the insured as opposed to . . . The case law seems to me to say in favor of coverage when it's a close call. Well, this isn't coverage. This is duty to defend. Agreed. And by the way, this is outside the record, but I'll just tell the Court, that's been one summary judgment on the underlying case. It's up on appeal. There are significant attorney's fees at issue in this dispute. But with all respect, Judge Hoare, I think I differ with you about what you were just suggesting, is that you don't automatically or always do anything. But if you read one sentence, and it can be read one of two different ways, the non-drafter insured in the state of Texas gets the benefit of the doubt. And we're not in the hypothetical that you were describing earlier. We took the position as the non-drafter insured, and it was the correct position, that the original petition did not include any covered claims. The insurer, even today, has never suggested that the original petition included covered claims. Well, it hasn't admitted it, but they, I think fairly, they're reserving rights. Well. They would still reserve rights. You know, at some point, I mean, all right. Thank you, Judge, for the correction. I want to address briefly what sort of remedy we think is appropriate. We believe summary judgment in favor of the insured net spend is appropriate. The case will need to be remanded for determination of the amount of the damages, once liability is established. And it will be remanded for the extra-contractual claims, which clearly survive if our interpretation is correct. Well, I'm not sure about that. Well, frankly, Judge. I haven't looked at it. Let's put it this way. This court, in the first instance, wouldn't be the court to decide whether they survive. If there's coverage, then we would have a right to pursue those, and if we lose, we lose. But no one's ruled on those extra-contractual claims. Coverage. Right. Right. This notion that there's some additional facts they need to discover about pre-petition discovery, let me just suggest briefly. There was no 56-D letter file. There was no suggestion that they needed more discovery. They argued, even though they were dueling summary judgment motions, they argued that ours should be denied because they thought there was a fact issue. But parties know how to go seek discovery to avoid summary judgment. They didn't do it. So it is ripe. The issue of the duty to defend certainly. The issue that's before this court is completely ripe for adjudication. That need not be remanded. Okay. We have your argument. All right. Thank you very much. Court will be adjourned.